UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TIMOTHY H. HUSSEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 09-832-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 4, 2009, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 19, 2009, and June 3, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on November 2, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 12, 1968. [Administrative Record ("AR") at 73, 88.] He has his GED, and has past relevant work experience as a carpenter and janitor. [AR at 94-95, 97.]

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments on September 21, 2005, and September 28, 2005, respectively, alleging that he has been unable to work since July 23, 2005, due to, among other things, wrist, knee, and eye problems and difficulty with reading comprehension. [AR at 28-29, 73-85, 88-98.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 43-54.] At the hearing on July 30, 2007, the ALJ granted plaintiff's request for a continuance so he could retain counsel. [AR at 6-13.] A second hearing was held on November 26, 2007, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 14-27.] On January 7, 2008,[1] the ALJ issued an unfavorable decision. [AR at 32-42.] When the Appeals Council denied plaintiff's request for review of the hearing decision on February 26, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] The ALJ's decision is dated January 7, 2007. [See AR at 32, 42.] It appears that the year is in error; the decision should be dated January 7, 2008. [See Joint Stipulation ("JS") at 2.]

2

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

1  If the claimant's impairment or combination of impairments does not meet or equal an impairment
2  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
3  sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled
4  and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform
5  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
6  case of disability is established. The Commissioner then bears the burden of establishing that the
7  claimant is not disabled, because he can perform other substantial gainful work available in the
8  national economy. The determination of this issue comprises the fifth and final step in the
9  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
10 at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since July 23, 2005, the alleged onset date of disability.[2] [AR at 37.] At step two, the ALJ concluded that plaintiff "has the following severe impairments: pain syndrome; left knee problems; and wrist problems." [AR at 37.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 38.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] "to perform a range of light work[4] as follows: able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; able to stand and/or walk for two hours each for a total of four hours during an eight-hour workday; able to sit for six hours during an eight-hour workday; able to climb, balance, stoop,

---

[2]   The ALJ also determined that plaintiff was insured for Disability Insurance Benefit purposes through December 31, 2008. [AR at 37.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

kneel, crouch, and crawl on an occasional basis; has a limited ability to handle[5] (gross) and finger,[6] but can use his left upper extremity for frequent handling and fingering and there is no restriction on his right upper extremity; and is mentally capable of performing simple repetitive tasks." [AR at 39.]  At step four, the ALJ concluded that plaintiff cannot perform any of his past relevant work.  [AR at 40.]  At step five, using Medical-Vocational Rule 202.21 of the Regulations as a framework and the vocational expert's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  [AR at 41.]  Accordingly, the ALJ found that plaintiff is not disabled.  [AR at 42.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) consider the consultative examiner's psychological evaluation; (2) consider the complete orthopedic evaluation of Dr. Philip Wirganowicz; (3) consider the state agency findings; (4) determine if plaintiff has a severe mental impairment; and (5) pose a complete hypothetical question to the vocational expert.  [JS at 2-3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

/

/

/

---

[5]  "Handling" is defined in the SSA's Programs Operations Manual System ("POMS") as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands (fingering not involved)."  POMS § DI 25001.001(B)(19).  POMS "is an internal Social Security Administration manual, for the internal use of Social Security Administration employees, and has no legal force and does not bind the Social Security Administration"; however, it is persuasive authority.  Knott v. Barnhart, 269 F.Supp. 2d 1228, 1234 (E.D. Cal. 2003) (citation omitted); see Hermes v. Secretary of Health & Human Servs., 926 F.2d 789, 791 n.1 (9th Cir. 1991).  The POMS sections referenced herein can be found on the Social Security Administration online database at: https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001.

[6]  "Fingering" is defined as "[p]icking, pinching, or otherwise working with the fingers primarily (rather than with the whole hand or arm as in handling)."  POMS § DI 25001.001(B)(17).

## A.    ORTHOPEDIC EVALUATION

Plaintiff asserts that the ALJ improperly considered the findings of Dr. Philip Wirganowicz, a consultative examining orthopedist. Specifically, plaintiff argues that the ALJ erred in not including in the RFC determination Dr. Wirganowicz's findings concerning plaintiff's limited ability to engage in fine or repetitive movements involving his left hand and wrist. [JS at 6-9.]

On October 29, 2005, Dr. Wirganowicz completed an orthopedic evaluation of plaintiff, in which he opined that plaintiff can lift 25 pounds frequently and 50 pounds occasionally; sit for an unlimited duration; stand or walk for approximately four hours in a normal workday with appropriate breaks; use his right upper extremity without restriction; and use his left upper extremity for gross motor movements, but "may have difficulty with fine or repetitive movements involving the hand and wrist." [AR at 117-21.] Dr. Wirganowicz noted that plaintiff had a normal range of motion in his right wrist, but that his range of motion is limited in his left wrist, and "there is also a presence of a fluctuant soft tissue mass over the dorsum of the wrist measuring approximately 2 cm in diameter that may represent tenosynovitis." [AR at 120-21.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31(citing Andrews 53 F.3d at 1043).

In the decision, the ALJ stated that he had expressly adopted the orthopedic limitations assessed by Dr. Wirganowicz. [AR at 40.] In concluding that plaintiff is limited to frequent handling and fingering with his left upper extremity, the ALJ specifically noted Dr. Wirganowicz's findings of "diminished range of motion of his left wrist compared to his right wrist," but did not

6

address Dr. Wirganowicz's opinion that plaintiff might have difficulty doing fine or repetitive movements using his left hand and wrist. [Id.] Further, although the ALJ's RFC determination was largely consistent with Dr. Wirganowicz's assessment of plaintiff's orthopedic limitations, the part of the RFC pertaining to plaintiff's use of his left upper extremity did not expressly incorporate Dr. Wirganowicz's opinion that plaintiff may have difficulty doing fine or repetitive movements with his left hand and wrist. [Compare AR at 39 (ALJ's RFC determination) with AR at 121 (Dr. Wirganowicz's assessment).] Because the ALJ and Dr. Wirganowicz used different terminology to describe plaintiff's functional limitations with his left upper extremity -- i.e., "handle" and "finger" (used by the ALJ) versus "fine" and "repetitive" (used by Dr. Wirganowicz) -- it is unclear whether the ALJ's RFC determination actually encompasses that part of Dr. Wirganowicz's opinion, or alternatively, if the ALJ rejected that part of his opinion. Furthermore, as the ALJ concluded that plaintiff is able to engage in frequent movement of his left upper extremity (e.g., handling and fingering), and Dr. Wirganowicz opined that plaintiff may have difficulty doing repetitive or fine movements (let alone frequent movements) with his left hand and wrist, it appears that the ALJ implicitly rejected that part of Dr. Wirganowicz's opinion. It follows, therefore, that the ALJ did not provide sufficient reasons for the rejection. See Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Significantly, it appears that the vocational expert's testimony may have been impacted by the ALJ's failure to expressly incorporate into the RFC determination Dr. Wirganowicz's opinion that plaintiff may have difficulty with fine or repetitive left hand and wrist movements. Specifically, the vocational expert testified that a hypothetical person with the orthopedic limitations described in the ALJ's RFC determination would be able to perform the jobs of a mail clerk, counter clerk, and sewing machine operator. [AR at 24-26, 41.] According to the Dictionary of Occupational Titles ("DOT"), the work of a mail clerk involves "repetitive or short-cycle work," and frequent fingering and handling; the work of a sewing machine operator requires "repetitive or short-cycle work," manual

dexterity equivalent to the capabilities of the middle third of the population, occasional fingering, and frequent handling; and the work of a counter clerk requires occasional fingering and handling. See DOT No. 209.687-026 (Mail Clerk); DOT No. 689.685-118 (Sewing Machine Operator); and DOT No. 249.366-010 (Counter Clerk). In finding plaintiff not disabled at step five of the sequential analysis, the ALJ relied on the vocational expert's testimony that plaintiff could perform these jobs. [AR at 41-42.] As the ALJ did not properly accept or reject Dr. Wirganowicz's opinion pertaining to plaintiff's questionable ability to engage in fine or repetitive movements with his left hand and wrist, and it appears that the exclusion of this limitation from the RFC may have impacted the disability analysis in this case, remand is warranted so that the ALJ can explicitly weigh and properly credit or reject this aspect of Dr. Wirganowicz's opinion.

**B.    MENTAL IMPAIRMENT**

Plaintiff asserts that the ALJ erroneously concluded that plaintiff has no severe mental impairment. [JS at 11-13.] Specifically, plaintiff contends that "[t]he ALJ's determination that [p]laintiff does not have a severe mental impairment is contrary to the findings of both Dr. Pierce and Dr. Loomis" indicating that plaintiff's mental impairments would have "more than a minimal effect" on his ability to work. [JS at 12.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening

device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions ...," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

Dr. Mark D. Pierce, an examining clinical psychologist, performed a psychological evaluation of plaintiff on November 2, 2005. [AR at 124-28.] Dr. Pierce diagnosed plaintiff with "[a]djustment disorder, with mixed emotional features," and "[a]lcohol abuse/dependence," and opined that plaintiff "would have likely difficulty working effectively with others." [AR at 127-28.] He also opined that plaintiff can "adapt to minimal changes in a work environment," do "simple and repetitive to medium-demand vocational skills," reason adequately to perform that level of vocational functioning, "remember and comply with simple one and two part instructions," and concentrate adequately to perform a lower demand regular work schedule for a full workweek. [AR at 128.] On November 18, 2005, K. J. Loomis, a non-examining medical consultant, completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form regarding plaintiff's mental limitations. [AR at 138-54.] Dr. Loomis opined that plaintiff has moderate limitations in maintaining social functioning, and in maintaining concentration, persistence, or pace. [AR at 152.] More specifically, he opined that plaintiff is moderately limited

in his ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. [AR at 138-39.]

In the decision, at step two of the sequential evaluation process, the ALJ concluded that plaintiff does not have any severe mental impairments because "there is no longitudinal history of any psychiatric care or treatment and nothing to show that [his] ... mental impairment causes more than a minimal limitation in his ability to perform basic mental work activities." [AR at 38.] The ALJ asserted that he had considered the four mental functional areas known as the "paragraph B" criteria -- including activities of daily living; social functioning; maintaining concentration, persistence, or pace; and documented episodes of decompensation -- and concluded that plaintiff has <u>no</u> limitations in any of these four basic areas. [Id.] See 20 C.F.R. §§ 404.1520a, 416.920a. In reaching that conclusion, the ALJ noted Dr. Pierce's findings that plaintiff can complete simple and repetitive to medium demand work, adapt to changes in the work environment, reason adequately, and concentrate adequately to perform a full-time workweek. [AR at 38.] However, the ALJ did not mention Dr. Pierce's opinion that plaintiff would have difficulty working with others, or Dr. Loomis' opinion that plaintiff is moderately limited in several areas of mental functioning, and there is no indication that the ALJ took these opinions into account when he concluded that plaintiff has no severe mental impairment. By disregarding Dr. Loomis' and Dr. Pierce's opinions in this regard, the ALJ effectively rejected all of Dr. Loomis' and part of Dr. Pierce's opinions. It follows, therefore, that the ALJ did not provide sufficient reasons for the rejections. See Cotter, 642 F.2d at 706-07; Social Security Ruling[7] 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and "[a]dministrative law judges ... may not ignore these opinions and must explain the weight given to these opinions in their decisions."). Remand is warranted so that the ALJ can

---

[7] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

properly accept or reject Dr. Loomis' and Dr. Pierce's opinions regarding plaintiff's mental functional limitations, and then further consider the severity of plaintiff's mental impairments in light of those opinions.[8]

### C. THE VOCATIONAL EXPERT'S TESTIMONY

Plaintiff asserts that the ALJ erred in connection with the vocational expert's testimony, as the hypothetical question posed to the vocational expert improperly excluded some of plaintiff's limitations. [JS at 14-17.] "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). Here, the ALJ based his questions to the vocational expert on his consideration of the medical evidence. As such, new vocational expert testimony may be necessary if, after reconsidering the medical evidence discussed above, the ALJ credits any of the limitations assessed by Dr. Wirganowicz, Dr. Loomis, or Dr. Pierce that the ALJ previously excluded from his RFC determination.

### VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reconsider Dr. Wirganowicz's opinion regarding plaintiff's orthopedic limitations; 2) reconsider Dr. Pierce's and Dr. Loomis' opinions

---

[8] As the Court finds that remand is warranted for the ALJ to reconsider the findings of Dr. Pierce and Dr. Loomis at step two of the sequential evaluation, the Court exercises its discretion not to address the parties' contentions concerning the ALJ's consideration of the doctors' findings at the other steps of the sequential evaluation. [See JS at 3-6, 9-11.]

regarding plaintiff's mental limitations, and then reassess the severity of plaintiff's mental impairments in light of those opinions; and 3) if warranted, obtain new testimony from a vocational expert. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 9, 2010

                                      PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE